UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MICHELLE TAYLOR | ) | CASE NO. 1:14CV338 |
| | ) | |
| Plaintiff | ) | MAGISTRATE JUDGE |
| | ) | GEORGE J. LIMBERT |
| v. | ) | |
| | ) | **MEMORANDUM AND OPINION** |
| CAROLYN W. COLVIN, | ) | |
| ACTING COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff requests judicial review of the final decision of the Commissioner of Social Security denying Michelle Taylor Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The Plaintiff asserts that the Administrative Law Judge (ALJ) erred in his June 1, 2012 decision in finding that Plaintiff was not disabled because she could perform a significant number of sedentary jobs (Tr. 11-19). The Court finds that substantial evidence supports the ALJ's decision for the following reasons:

## I. PROCEDURAL HISTORY

Plaintiff, Michelle Taylor, filed her application for DIB and SSI on October 25, 2010, alleging she became disabled on June 28, 2010 (Tr. 193, 195). Plaintiff's application was denied initially and on reconsideration (Tr. 134, 138, 146, 149). Plaintiff requested a hearing before an ALJ, and, on May 7, 2012, a hearing was held where Plaintiff appeared and testified before an ALJ (Tr. 43-64). Ted

1

Macy, a vocational expert, also testified (Tr. 65-71).

On June 1, 2012, the ALJ issued his decision, finding Plaintiff not to be disabled because she could perform a significant number of sedentary jobs (Tr. 11-19). Plaintiff requested a review before the Appeals Council, and the Appeals Council denied Plaintiff's request for review (Tr. 10-12). Therefore, Plaintiff has requested judicial review of the Commissioner's final decision pursuant to 42 U.S.C. Sections 405(g) and 1383(c).

## II. STATEMENT OF FACTS

Plaintiff was born on May 21, 1970, and was forty-one years old at the time of the hearing (Tr. 36). She has an eleventh grade (limited) education, and past relevant work experience as a fast food worker, fast food manager, and as a packer (Tr. 66-67).

## III. SUMMARY OF MEDICAL EVIDENCE

On June 10, 2010, Plaintiff, who had been working two days each week, told Guan Yang, M.D. that she had quit her job due to pain (Tr. 491). Dr. Yang described Plaintiff as well-appearing, and observed that she could walk without difficulty (Tr. 491). Plaintiff complained that her pain medications were not working, and this complaint caused Dr. Yang to express his concern about Plaintiff's expectations from the medications (Tr. 491). Dr. Yang noted that, after further discussion, Plaintiff stated that even if she is at home, she is still very active and will do house cleaning (Tr. 491). Dr. Yang commented that it seemed to him that Plaintiff had a tendency to overdo it (Tr. 491).

On August 31, 2010, Plaintiff saw Dr. Bressi for a routine follow-up examination (Tr. 311-313). Dr. Bressi noted that Plaintiff continued to have pain in her lower and mid back (Tr. 312). She

told Dr. Bressi that a recent radio ablation frequency treatment did not help her, but he observed that Plaintiff was not complaining of buttock or hip pain today (Tr. 312). Dr. Bressi commented that Plaintiff had unrealistic expectations about what treatment could do for her, and he observed that Plaintiff had admitted to seeking one hundred percent pain relief (Tr. 312). Dr. Bressi explained that he did not have a cure for chronic pain, and he pointed out that Plaintiff was still able to function at a high activity level and probably would not be able to do so without treatment (Tr. 312).

On September 21, 2010, Plaintiff saw nurse practitioner Carol Haas, who reported that when she entered the examination room, Plaintiff was very upset about the lengthy wait, and stated that the wait had aggravated her pain (Tr. 295). Ms. Haas found no tenderness while palpating Plaintiff's low back (Tr. 295). Plaintiff reported that forward flexion was very painful for her, but she could perform heel and toe walking without aggravating her pain (Tr. 295). Ms. Haas reported a full range of motion for Plaintiff and measured her strength against resistance as 4/5 (Tr. 296). Ms. Haas reviewed MRIs of Plaintiff's cervical and lumbar spine, and told Plaintiff that there was nothing operable there (Tr. 296).

On February 21, 2011, Plaintiff saw Dr. Yang and complained of pain in her lumbar spine and reported new complaints of chest wall and rib pain (Tr. 356). Plaintiff said she had received limited relief from a recent sacroiliac injection, and requested a new or different treatment plan (Tr. 356). Dr. Yang observed that Plaintiff's current medication and treatment regimen allowed her to perform her limited activities of daily living (Tr. 356). Dr. Yang responded to Plaintiff's complaints by adding Celebrex to her current medication regimen (Tr. 357).

On April 6, 2011, Walter Holbrook, M.D. reviewed the record and opined that Plaintiff could lift up to twenty pounds occasionally and up to ten pounds frequently (Tr. 125). Dr. Holbrook opined

that Plaintiff could stand/walk for six hours, and that she could sit for about six hours (Tr. 125). Dr. Holbrook found that Plaintiff did not have any manipulative limitations (Tr. 126).

A May 18, 2011 note from Dr. Yang included Plaintiff's complaint of moderately increased pain after an epidural steroid injection (Tr. 377). Plaintiff again requested a change in her treatment plan (Tr. 377). Test results revealed decreased range of motion at the lumbar paraspinal area, negative results on straight leg raising tests, negative bilateral calf pain, and negative bilateral ankle swelling (Tr. 377).

On September 26, 2011, Plaintiff saw Dr. Kumar for medication management (Tr. 446-450). According to Plaintiff, pain interfered with her activities one hundred percent of the time (Tr. 446). Dr. Kumar reported, on examination, that Plaintiff appeared well, and that she was in no acute distress (Tr. 449). She walked with an antalgic gait, but did so without help (Tr. 449). Examination of Plaintiff's spine revealed mild scoliosis, no midline tenderness or mass, as well as moderate facet tenderness and marked sacroiliac joint tenderness (Tr. 449). Dr. Kumar saw that myofascial tenderness was also present without trigger points (Tr. 449). Dr. Kumar reported normal (5/5) strength in Plaintiff's limbs and negative results on straight leg raising tests (Tr. 449).

On March 30, 2012, Plaintiff saw Dr. Yang for a routine follow-up regarding lumbar spine and right hip pain (Tr. 583). Dr. Yang reported that a recent injection had provided Plaintiff with great pain relief for about one month (Tr. 583). Plaintiff's current complaint was of right hip pain due to trochanteric bursitis (Tr. 583). Plaintiff again told Dr. Yang that her current medication regimen was not working (Tr. 583). Dr. Yang, however, noted that, despite her complaints, Plaintiff was able to carry out her limited activities of daily living (Tr. 583). According to Dr. Yang, Plaintiff's lumbar spine pain was improving, but she still had significant right hip pain secondary to trochanteric bursitis

4

(Tr. 583). Dr. Yang prescribed a Voltarin topical gel for Plaintiff's hip problems (Tr. 583).

### IV. SUMMARY OF TESTIMONY

First, Plaintiff testified that she is a younger individual who has an eleventh grade education (Tr. 50-51). She has a driver's license, and testified that she drove herself to the hearing (Tr. 51). Plaintiff stated that her limited ability to stand and/or sit rendered her unable to work (Tr. 54). She also testified that her medications caused drowsiness, and that she had to keep adjusting her position in order to feel comfortable (Tr. 55). Plaintiff testified that treatment for her various medical conditions consisted of medications and injections (Tr. 55-56). She said she underwent three injections, done one week apart, four times each year (Tr. 56).

Plaintiff estimated that she could stand for no more than ten minutes at a time, and she testified that she could not lift twenty pounds (Tr. 57, 60). Her household activities consisted of cooking sometimes, doing laundry with help from her twenty year-old son, and washing the dishes (Tr. 60-61). Plaintiff also testified that she had tried such treatment modalities as physical therapy and a TENS unit, but found that they caused muscle spasms, and ceased using them (Tr. 62).

Thereafter, the vocational expert (VE) testified and identified three past relevant jobs for Plaintiff: a fast food worker, a light unskilled job; a fast food manager or assistant manager, a light semi-skilled job; and a packer, a medium, unskilled job (Tr. 66-67).

The ALJ relied on his third hypothetical question, that asked the VE about a person of Plaintiff's age, education, and work experience, who could perform sedentary work, and could not climb ladders, ropes, and scaffolds, but could occasionally climb ramps and stairs (Tr. 67). This person could occasionally balance, stoop, crouch, and crawl (Tr. 67). She could understand and carry

5

out detailed, but not complex, instructions, and would need a relatively static, low-stress workplace with few changes in work setting or work processes (Tr. 67-68). This person could not perform jobs with strict production quotas or fast-paced high production demands (Tr. 68). She could have no more than infrequent or superficial contact with the public, but could occasionally interact with co-workers (Tr. 68). This person would also need a cane while standing and walking (Tr. 68).

The VE responded that the hypothetical person could perform six hundred fifth local jobs as a bench hand, four hundred fifty jobs as a table worker, and six hundred local jobs as a final assembler (Tr. 68-69). The VE testified that a person who would be off task twenty percent of the time or one who would miss work three-to-four times each month, could not work (Tr. 69).

## V.     STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to disability insurance benefits and supplemental security income. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (Sections 20 C.F.R. 404.1520(b) and 416.920(b) (1992);

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (Sections 20 C.F.R. 404.1520(c)and 416.920(c)(1992);

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, *see* Sections 20 C.F.R. 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in Sections20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (Sections 20 C.F.R. 404.1520(d) and 416.920(d) (1992);

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (Sections 20 C.F.R. 404.1520(e) and 416.920(e) (1992);

> 5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (Sections 20 C.F.R. 404.1520(f) and 416.920(f) (1992).

*Hogg v. Sullivan,* 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden of going forward with the evidence at the first four steps and the Commissioner has the burden at Step Five to show that alternate jobs in the economy are available to the claimant, considering her age, education, past work experience and residual functional capacity. *See, Moon v. Sullivan,* 923 F.2d 1175, 1181 (6th Cir. 1990).

## VI. STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by Section 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. Section 405(g). Therefore, this Court is limited to determining whether substantial evidence supports the Commissioner's findings and whether the Commissioner applied the correct legal standards. *See, Abbott v. Sullivan,* 905 F.2d 918, 922 (6th Cir. 1990). The Court cannot reverse the ALJ's decision, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *See, Walters v. Commissioner of Social Security,* 127 F.3d 525., 528 (6th Cir. 1997). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *See, Richardson v. Perales,* 402 U.S. 389, 401 (1971). It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *See, id.,*

*Walters,* 127 F.3d 525, 532 (6th Cir. 1997). Substantiality is based upon the record taken as a whole. *See, Houston v. Secretary of Health and Human Servs.,* 736 F.2d 365 (6th Cir. 1984).

## VII. ANALYSIS

Plaintiff asserts one issue:

WHETHER THE ALJ'S ANALYSIS OF PLAINTIFF'S PAIN IS SUPPORTED BY SUBSTANTIAL EVIDENCE.

The social security regulations establish a two-step process for evaluating pain. *See,* 20 C.F.R. Section 416.929, SSR 96-7p. First, there must be (1) objective medical evidence of an underlying medical condition, and (2) objective medical evidence that confirms the severity of the alleged disabling pain, or, objectively, the medical condition is of such severity that it can reasonably be expected to produce such disabling pain. *See, id.; Stanley v. Secretary of Health and Human Services,* 39 F.3d 115, 117 (6th Cir. 1994); *Duncan v. Secretary of Health and Human Services,* 801 F.2d 847, 853 (6th Cir. 1986). In other words, the ALJ must first consider whether an underlying medically determinable physical or mental impairment exists that could reasonably be expected to produce the individual's pain or other symptoms. *See, id.* Secondly, the ALJ must then determine the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which the symptoms limit the claimant's ability to do basic work activities. *See, id.*

The ALJ should consider the following factors in evaluating a claimant's symptoms:

1) the individual's daily activities;

2) the location, duration, frequency, and intensity of the individual's pain or other symptoms;

3) factors that precipitate and aggravate the symptoms;

8

> 4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
>
> 5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
>
> 6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for fifteen to twenty minutes every hour, or sleeping on a board); and
>
> 7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

*Id.; see, also* 20 C.F.R. Sections 404.1529(c) and 416.929(c); Social Security Rule (SSR) 96-7p.

Here, the Plaintiff agrees with the ALJ's determination at step one of the two-step pain analysis that Plaintiff had multiple severe impairments, objectively demonstrated, that could cause pain (Tr. 33). The ALJ held that Plaintiff suffered from: lumbar spondylosis, lumbar degenerative disc disease, fibromyalgia, displaced lumbar disc, chronic pain syndrome, and knee osteoarthritis (Tr. 30).

However, the Plaintiff argues that the ALJ's analysis of her symptoms of pain at step two of this process is not supported by substantial evidence. The ALJ states that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statement concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the ALJ's RFC (Tr. 33).

The Court finds that, based upon the ALJ's review of the medical evidence that documented the existence of impairments that could reasonably be expected to produce symptoms of pain, the

claimant's allegations of disabling symptoms and limitations are not fully credible.

The record shows that Plaintiff has significant medical problems. However, the issue is whether the ALJ reasonably accommodated Plaintiff's medical problems in his residual functional capacity (RFC) finding. The ALJ limited Plaintiff to sedentary work, and the ALJ limited balancing, stooping, crawling, kneeling, and crouching on an occasional basis (Tr. 32). Plaintiff has not referred to any medical opinion of record that assessed greater limitations than those found by the ALJ.

Plaintiff states that she has reviewed the medical findings of record, and argues that they indicate greater limitations than those found by the ALJ. Plaintiff alleges that treating sources reported that she was only able to perform limited activities of daily living, despite her need to use narcotic medications and undergo injections (Plaintiff's Brief at 11).

However, the record actually indicates that two of her treating sources, Dr. Yang and Dr. Bressi, opined that Plaintiff had unrealistic expectations about the pain relief that treatment could provide for her. In June 2010, Dr. Yang described Plaintiff as well-appearing, and observed that she could walk without difficulty (Tr. 491). When Plaintiff complained that her pain medications were not working, Dr. Yang expressed his concern that Plaintiff's expectations regarding pain relief from the medications were unrealistic (Tr. 491). Dr. Yang noted that, after further discussions, Plaintiff stated that even if she is at home, she is still very active and will do house cleaning (Tr. 491). Dr. Yang commented that it seemed to him that Plaintiff had a tendency to overdo it (Tr. 491).

Furthermore, in August 2010, Dr. Bressi acknowledged Plaintiff's statement that a recent radio ablation frequency treatment did not help her (Tr. 312). Yet, Dr. Bressi also observed that Plaintiff was not complaining of buttock or hip pain at this appointment (Tr. 312). Dr. Bressi commented that Plaintiff had unrealistic expectations about what treatment could do for her, and he observed that

Plaintiff had admitted to seeking one hundred percent pain relief (Tr. 312). Dr. Bressi explained that he did not have a cure for chronic pain, and he pointed out that Plaintiff was still able to function at a high activity level, and probably would not be able to do so without treatment (Tr. 312). These statements from treating sources Drs. Yang and Bressi contradict Plaintiff's position that she could only perform limited activities "despite her use of significant doses of narcotic pain medication," as argued in Plaintiff's brief. The ALJ correctly relied on Dr. Bressi's statement regarding Plaintiff's ability to function at a high activity level (Tr. 34).

Next, Plaintiff challenges the ALJ's finding that the injections she received provided her with significant relief (Plaintiff's Brief at 12, citing Tr. 34). Nevertheless, Dr. Bressi questioned Plaintiff's statement that a radio ablation procedure failed to provide relief (Tr. 312). Furthermore, in March 2012, Dr. Yang reported that a recent injection had provided Plaintiff with great pain relief for about one month (Tr. 583). Plaintiff does not challenge these statements from her treating doctors. Instead, she describes the injection treatments she received (Plaintiff's Brief at 12-13). This discussion includes a number of instances where Plaintiff complained to her doctors that the treatments were not effective. However, there are not any statements from any physician that suggested the treatments were not effective. Instead, the ALJ relied on a statement from Dr. Yang that talked about great relief.

Plaintiff's complaints that the injections did not produce significant benefit are not supported by the record. Both treating physicians–Drs. Yang and Bressi–commented that Plaintiff had unrealistic expectations regarding the relief that could be obtained from treatment (Tr. 312 – Bressi, 491 – Yang). Furthermore, at a number of her appointments, Plaintiff asked for a change in treatment plans (Tr. 356, 377, 583). Plaintiff told Dr. Kumar that pain interfered with her activities one hundred percent of the time. Plaintiff frequently complained that her treatments did not work in contradiction of her treating

11

physicians' comments.

Plaintiff also argues that the ALJ erred because he did not document or consider her failed trials of both physical therapy and a TENS unit in his analysis (Plaintiff's Brief at 14, citing Tr. 449). However, Plaintiff saw Dr. Kumar in September 2011, as part of her quest to find treatment that would satisfy her concerns. Here, the statements about failed physical therapy and failed results from a TENS unit consisted of Plaintiff's statements to Dr. Kumar (Tr. 446, 449). However, after examining Plaintiff, Dr. Kumar recommended a multi-disciplinary approach with counseling for chronic pain and opioid dependence (Tr. 449). Dr. Kumar indicated that this plan would consider reducing the narcotic medications slowly, and would use spinal injections as needed (Tr. 449). Thereafter, Dr. Kumar reported that Plaintiff did not want to make any changes to her pain medications, and that she had elected to continue her treatment at SUMMA Pain Clinic (Tr. 449). Plaintiff frequently requested treatment changes, and rejected the change that Dr. Kumar offered.

Finally, Plaintiff argues that the ALJ's statement that her doctors did not report intolerable medication side effects is not supported by her testimony that the medications made her drowsy (Plaintiff's Brief at 14). However, the ALJ reviewed doctors' reports dated May 18, 2011 and February 17, 2012 (Tr. 375, 585). The reports indicated that there were not adverse medication side effects (Tr. 311, 492). Hence, the ALJ relied on reports prepared by Plaintiff's treating physicians, and did not ignore the limitations caused by the substantial amounts of medications she took. While Plaintiff's assertions are primarily based on her subjective allegations, the ALJ relied on substantial evidence in the record. Thus, the ALJ correctly determined that Plaintiff could perform a limited range of sedentary work.

**IX.    CONCLUSION**

Based upon a review of the record and law, the undersigned affirms the ALJ's decision. Substantial evidence supports the finding of the ALJ that Plaintiff retained the residual functional capacity (RFC) to perform a significant number of sedentary jobs, despite her impairments, and, therefore, was not disabled.  Hence, she is not entitled to DIB and SSI.


Dated: October 15, 2014                             */s/George J. Limbert*
                                                                        GEORGE J. LIMBERT
                                                                        UNITED STATES MAGISTRATE JUDGE

13